# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ONE WAY APOSTOLIC CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 1132 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge |
| EXTRA SPACE STORAGE, INC.; | ) | Maria Valdez |
| and JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's First Amended Complaint, premised on diversity jurisdiction, alleges breach of contract against Defendant Extra Space Storage, Inc. ("Extra Space"), and conversion against both defendants in relation to items Plaintiff had stored in a unit at Extra Space that were later foreclosed on and sold by Extra Space to John Doe. The matter is now before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) [Doc. No. 21]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Defendant's motion is denied.

**BACKGROUND**

Plaintiff is a church that executed two separate contracts with Extra Space to store Plaintiff's furniture, ornaments, and equipment. (Am. Compl., Ex. A.)[1] The first contract was dated November 8, 2013 for a 45 by 20 foot unit at a monthly rental rate of $771.00. The second contract was dated November 13, 2013 for a 10 by 30 foot unit at a monthly rental rate of $291.00.[2] Rent was due on the first day of the month, in advance, and without demand. Each contract also included a late fee of 20% of the monthly rent or $20, whichever was greater; a lien fee of $125; and a lien foreclosure fee of $50; plus additional fees for a lock cut, returned check, and cleaning. The contracts provided that the late fee, payable on demand, would be applied if rent was received more than six days after it was due. An account thirty or more days delinquent would be assessed the lien fee, and an account sixty or more days delinquent would be assessed the lien foreclosure fee.

The contracts included a notice of lien on all property stored in the units pursuant to the Self-Service Storage Facility Act, 770 Ill. Comp. Stat § 95/1 *et seq.* The Act provides that an owner's lien for a claim that has become due may be satisfied after notice, which must include a demand for payment not less than fourteen days after delivery of the notice. *Id.* § 95/4(C)(4). After the expiration of the

---

[1] The contracts are attached as exhibits to the complaint and therefore are considered part of the complaint. *See* Fed. R. Civ. P. 10(c); *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

[2] Plaintiff's complaint alleges that it rented a total of four units, numbers 3429, 3008, and 3417 at a facility located at 5701 W. Ogden Ave., and number 912 at a facility located at 5525 W. Roosevelt Rd. The two contracts attached to the complaint reference only numbers 3429 (the $771.00 per month rental) and 3008 ($291.00), as those were the only units subject to auction.

time given in the notice, the lienholder is directed to publish an advertisement for the sale or disposition of the property once a week for two consecutive weeks in a newspaper of general circulation. *Id.* § 95/4(E). A unit's occupant may redeem the property by paying the amount necessary to satisfy the lien and all reasonable expenses at any time before the sale or disposition of the property. *Id.* § 95/4(H). Under the express terms of the contracts, acceptance of a partial rent payment to cure default for non-payment of rent shall not delay or stop foreclosure on stored property.

The complaint alleges that Plaintiff made all monthly payments on time and states that its payments were up to date as of August 31, 2015. The Court accepts as true that Plaintiff's payments were up to date as of August 31, but not that it made all monthly payments on time. As Extra Space's motion points out, the August 31 payment receipt attached to the complaint shows that the amount paid by Plaintiff on that date included two months' rent[3] and $125 lien fees on three total units – Units 3429 and 3008, as well as a third unit not at issue, Unit 3417. (Am. Compl., Ex. B); *see Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

The complaint then skips to October 29, 2015, when Plaintiff alleges that it sent by overnight mail a check $1,500.00 referencing Units 3427 and 3008, as well

---

[3] The payment receipt reflects that as of August 31, 2015, the rent on Unit 3429 had increased to $826.00, and Unit 3008 to $315.00. Rent on the third space, Unit 3417, was $301.50. (Am. Compl., Ex. B.)

as Unit 3417. (Am. Compl., Ex. C.) Plaintiff claims those payments were not cashed, but Plaintiff was never informed of this fact. The pastor of the church, Noah Nicholson, received a telephone message on November 13, 2015 from an Extra Space employee stating that he needed to call about the storage, but he was not told that the payment was not cashed or that Extra Space intended to auction off the property in units 3429 and 3008. Nicholson did not discover that the property had been sold until he went to the storage units on November 30, 2015. When Nicholson questioned why he was not informed about the auction, an Extra Space employee told him they did not have the correct address. The address listed on the August 31 payment receipt, however, was Nicholson's correct address, and the check sent in October listed had the church's corporate address. In addition, Extra Space had Nicholson's current telephone number. Nicholson was informed on December 1, 2015 that the auction had taken place on November 18, 2015. Plaintiff further alleges that lack of payment was a pretext to sell the property to John Doe, a buyer already known to Extra Space, and Defendants colluded to seize the property, which Plaintiff alleges to be valued at $367,500.00.

## **DISCUSSION**

### I. **LEGAL STANDARD**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to decide the merits of a case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In determining whether to grant a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations in the

4

complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, "a plaintiff's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Seventh Circuit has read the Twombly decision as imposing "two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concerta Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (internal citations and quotations omitted). In determining what "plausibly" means, the Seventh Circuit has explained that "the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010).

## II. ANALYSIS

Extra Space's motion argues: (1) the breach of contract claim should be dismissed because Plaintiff materially breached the agreement by failing to pay rent; (2) the conversion claim should be dismissed because Plaintiff's right to the stored property was not exclusive, given that it was behind on rent payments; and (3) Plaintiff's prayer for punitive damages should be stricken because Plaintiff's failure to pay rent shows that it cannot meet the standard under its conversion claim that Extra Space acted in willful and wanton disregard of its rights.

Under Illinois law, the elements of a breach of contract claim are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CiviMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015); *see also Goldstein v. Lustig*, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.").

According to Extra Space, the exhibits to the complaint demonstrate that Plaintiff was behind on its monthly rent payments at the time of the foreclosure sale in November 2015, making it in material breach of the contracts and unable to satisfy the element of substantial performance. Specifically, Extra Space argues that Plaintiff did not make its September 1 or October 1 rent payments on the two

6

units and owed a combined total of $2,282.00 in base rent, and therefore the alleged October 29, 2015 payment was insufficient to cover the outstanding balance.

Extra Space's argument disregards the fact that there were multiple separate contracts at issue in this case; each auctioned unit was subject to a separate contract, and the third unit (Unit 3417) included in the payment was presumably subject to its own contract. As a result, the Court cannot say as a matter of law that Plaintiff's attempted payment was insufficient to redeem either unit from a foreclosure sale. For example, the Unit 3008's rent was $315.00 per month. Assuming Plaintiff had failed to pay for two months, the contract suggests the total amount due and owing as of October 29, 2015 was at most $845.00, and the amount due on Unit 3429 would have been around $1867.00.[4] First, it is undisputed that as of October 29, the property had not been disposed of, and thus it could have been redeemed under the relevant statute. Second, it cannot be said at this stage of the litigation that the amount paid could not have redeemed the property. The complaint and attached exhibits do not demonstrate that there was any rent owed on the third space, Unit 3417, nor does Extra Space's motion argue that Unit 3417 was in arrears. Viewing all inferences in the light most favorable to Plaintiff, the fact that its contents were apparently not auctioned in November suggests that it was not. Without further information about the total amount owed for all three

---

[4] The figures represents monthly rent times two months, plus $20 late fee times two months, plus a $125 lien fee and a $50 lien foreclosure fee, which would have become due and owing as of October 30, 2015, the date the check was purportedly received. However, it is unclear from the terms of the contract whether the lien foreclosure fee would have been due, as payment was allegedly received on the sixtieth day.

units listed on the $1,500.00 check, it cannot be said that the amount was insufficient as a matter of law to redeem at least one of the two units.[5]

The Court also notes that even if Extra Space did have the contractual right to foreclose on the property in the units, that does not mean that they did not breach the contract's terms regarding the foreclosure sale. Plaintiff alleges it did not receive notice of the sale as required by the Self-Service Storage Facility Act, which is expressly referred to in the contracts. Furthermore, the date of the auction alleged in the complaint makes a colorable claim that Extra Space did not comply with the Act's terms. A lienholder is required first to provide notice with a demand for payment not more than fourteen days after delivery of the notice, then "[a]fter the expiration of the time given in the notice," to publish an advertisement of the sale for two consecutive weeks. 770 Ill. Comp. Stat. § 95/4(C)-(D). The auction is alleged to have occurred less than three weeks after the sixty-day period of non-payment triggering foreclosure proceedings. Plaintiff has therefore plausibly stated a claim that it performed under the terms of at least one contract, and Extra Space breached the contract by foreclosing the property and/or disposing of it.[6]

---

[5] The contract provides that if an occupant is renting more than one space, default on one space operates as a default on all rented spaces. (Am. Compl. Ex. A, ¶ 5.) This provision, however, relates to denial of access to the property in the unit, not to foreclosure.

[6] Extra Space's other arguments are also premised on the notion that Plaintiff was behind on its rent. Therefore, the motion to dismiss the conversion claim and the prayer for punitive damages must also be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 21] is denied.

**SO ORDERED.**            **ENTERED:**

*[Signature: Maria Valdez]*

**DATE:**    **July 8, 2016**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**