IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ONE WAY APOSTOLIC CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 1132 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge |
| EXTRA SPACE STORAGE, INC., | ) | Maria Valdez |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's First Amended Complaint alleges breach of contract against Defendant Extra Space Storage, Inc. ("Extra Space") in relation to items kept in a storage unit at Extra Space that were later foreclosed on and sold by Extra Space.[1] The matter is now before the Court on Defendant's Motion for Partial Summary Judgment on Damages [Doc. No. 59]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Defendant's motion is granted.

---

[1] Defendant's earlier motion for summary judgment on the merits was granted as to Plaintiff's conversion claim and certain aspects of the breach of contract claim. The only surviving triable issue of fact was whether Defendant breached the contract by failing to give proper notice of the foreclosure sale. *See One Way Apostolic Church v. Extra Space Storage, Inc.*, No. 16 C 1132 2017 WL 2215021, at *8 (N.D. Ill. May 19, 2017).

1

## FACTS[2]

Plaintiff One Way Apostolic Church was, at all relevant times, an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois. (LR 56.1(a)(3) ¶ 2.) Extra Space is a Maryland corporation with its principal place of business in Utah. (*Id.* ¶ 3.)

In November 2013, Plaintiff's pastor, Noah Nicholson, contracted for three storage units at a Smart Stop facility on Ogden Avenue in Chicago.[3] He signed the contracts in his capacity as pastor and president. (*Id.* ¶¶ 5-6, 9.) Paragraph 6 of the contracts, entitled "Use of Storage Space," includes the following statement in bold type:

> Occupant shall not store antiques, artworks, heirlooms, collectibles or any property having special or sentimental value to Occupant. Occupant waives any claim for emotional or sentimental attachment to Occupant's property.

(*Id.* ¶ 7.)

Paragraph 8, entitled "Limitation of Value," is underlined and in bold type:

> Occupant agrees not to store property with a total value in excess of $5,000 without the written permission of the Owner or Manager and Occupant has provided proof of insurance to Owner or Manager to cover the value of the stored property. If such written permission is not obtained, the value of Occupant's property shall be deemed not to exceed $5,000. Nothing herein shall constitute any agreement or

---

[2] Unless otherwise noted, the following material facts are undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. Defendants LR 56.1 statement is limited to those facts necessary for ruling on the present motion, and familiarity with other contextual facts in the case is presumed. *See One Way*, 2017 WL 2215021.

[3] Extra Space took over the facility from Smart Stop on October 1, 2015, and continued to honor the rental contracts in place at the time of the acquisition. (LR 56.1(a)(3) ¶ 16.) Although three units were rented, only two were foreclosed on. The two foreclosed units are the subject of the present litigation.

> admission by Owner or Manager that Occupant's stored property has any value, nor shall anything alter the release of Owner's liability set forth below.

(*Id.* ¶ 8.) Plaintiff has stipulated that Nicholson signed the contracts, the above paragraphs were contained in the contracts, and he agreed to those terms. (*Id.* ¶ 10.)

Plaintiff admits that Nicholson never received Defendant's written permission to store property in excess of $5,000 in value in any of the three rented units. (*Id.* ¶ 11.) Nicholson did not remember providing Defendant with either a certificate of insurance indicating that the property stored in the units was covered by a State Farm insurance policy or a copy of the policy itself.[4] (*Id.* ¶¶ 12-13.) At the time he signed the rental contracts, Nicholson purchased tenant insurance with a limit of $5,000 for one unit and $2,000 for another. (*Id.* ¶ 14.) Plaintiff did not make a claim on either of those tenant insurance policies after the units were foreclosed on in November 2015. (*Id.* ¶ 15.)

## DISCUSSION

I.  **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court

---

[4] The value of the State Farm coverage is unclear. Plaintiff's response argues that it had a $6 million policy, and Nicholson's deposition also mentions that it was $6 million. (*See* Pl.'s Resp. at 1, 4, 6; LR 56.1(b)(3)(C) ¶ 12.) But one paragraph later, Nicholson testified that "we figured the $200,000 is more than enough adequate to cover those things." (*Id.* ¶ 12.) In any event, it is undisputed that the amount of coverage is significantly greater than $5,000.

3

must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted); *see also Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002) ("Conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.").

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party

relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)); *see Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). Finally, the Court is "'not required to draw every conceivable inference from the record.'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

## II.  ANALYSIS

Defendant argues that summary judgment on the issue of damages on Plaintiff's remaining breach of contract claim is appropriate because Paragraph 8 of contract limited the total damages to $5,000 per unit; Plaintiff did not invoke the opt-out clause contained in that paragraph; and enforcement of that provision would not be unconscionable.

Section 7.5 of the Illinois Self-Service Storage Facility Act ("Storage Act") provides, in relevant part:

> If the rental agreement contains a limit on the value of property that may be stored in the occupant's space, this limit is deemed to be the maximum value of the stored property, provided that this limit provision must be printed in bold type or underlined in the rental agreement in order to be enforceable.

770 Ill. Comp. Stat. § 95/7.5 (West 2011).

Paragraph 8 of the rental contracts Nicholson signed expressly limited the value of property in each unit to $5,000 unless the occupant received written permission from the owner. Plaintiff does not dispute that the limitation was in the contracts or that Plaintiff and/or Nicholson did not obtain permission to store items valued in excess of $5,000 in the units. Plaintiff's only response is that the

5

limitation of value provision is unenforceable because: (1) the provision did not comply with the spirit of Section 7.5 of the Storage Act; (2) Defendant failed to give proper notice of non-payment; and (3) enforcing the limitation would be unconscionable.

### A. Section 7.5

Plaintiff contends that the legislative intent behind Section 7.5 of the Storage Act "was to make the provision standout from the rest of the contract." (Pl.'s Resp. at 2.) According to Plaintiff, much of the rental agreement is in bold, underlined, or includes capitalized letters, and thus the limitation of value is unenforceable because it fails to stand out from the rest of the contract such that a reasonable person would easily notice it. This argument fails for two reasons. First, the Storage Act requires only that the limitation "be printed in bold type or underlined" in order to be enforceable. 770 Ill. Comp. Stat. § 95/7.5 (West 2011). Nothing in the statute specifies that the provision must be printed differently than any other words in the contract or that it must stand out in any unique manner. And even assuming that legislative history were relevant to interpreting the Storage Act, Plaintiff has failed to cite to any history suggesting the legislature agrees with Plaintiff's reading of the statute. Second, Paragraph 8 is the only paragraph in the rental contract that is both in bold and underlined, and thus the provision does stand out from the rest of the contract. *Hamilton v. O'Connor Chevrolet, Inc.*, 399 F. Supp. 2d 860, 867 (N.D. Ill. 2005) (finding a disclaimer on the reverse side of a contract sufficiently conspicuous where the disclaimer itself was in bold, and bold type on the front side

6

directed the reader to read the back side of the page). The limitation of value paragraph thus complied with Section 7.5 of the Storage Act.

**B.** **Improper Notice**

Plaintiff next contends that in order for Defendant to apply the limitation, it must have first complied with the section of the Storage Act related to the enforcement of lien. Plaintiff's argument is somewhat muddled, but it alleges that because Defendant failed to satisfy the enforcement of lien requirement, it did not have a lien, and thus could not have sold the property. Plaintiff further argues that the legislature did not intend to allow storage facility owners to sell property without notice and be liable for only $5,000 per unit.

As an initial matter, Plaintiff misreads this Court's prior opinion denying in part Extra Space's motion for summary judgment. That order found an issue of fact as to whether Plaintiff had received notice of the property auction as required by the Storage Act, but it did not find that Defendant had no lien on the property. To the contrary, the order cited the Storage Act's provision establishing that an owner of a self-storage facility has a lien on all stored property as a matter of law, and it further determined that Plaintiff had breached the contract due to non-payment of rent. *See One Way Apostolic Church v. Extra Space Storage, Inc.*, No. 16 C 1132, 2017 WL 2215021, at *4-5 (N.D. Ill. May 19, 2017). The only issue left for the trier of fact was whether proper notice was given to enforce the existing lien through a foreclosure sale.

Moreover, Plaintiff again relies heavily on phantom legislative history in support of its argument. Plaintiff claims that in codifying the limitation of value, the legislature intended to protect storage facility owners from having to obtain fire, flood, or burglary insurance for all renters' property, and "renters should be responsible for obtaining their own insurance." (Pl.'s Resp. at 4.) Plaintiff believes that the statute thus was not meant to apply in the present situation, where Plaintiff had $6 million worth of insurance on its property, and Defendant intentionally sold the property without notice. No citation to this alleged legislative history is given, and the Court cannot discern a reasonable argument whereby Defendant's failure to properly notify Plaintiff of a foreclosure auction would render the limitation of value provision null and void.

Contrary to Plaintiff's argument, allowing a storage facility to limit its liability after a foreclosure auction would not "lead to an absurd result." (*Id.* at 5.) Plaintiff had the option under the contract to seek permission to store items of a value greater than $5,000, but it did not do so. Indeed, a truly absurd result would obtain if Plaintiff were allowed to reject the procedure to declare a property value of over $5,000, fail to pay timely rent, and then claim after auction that the value substantially exceeded the limitation.

### C. <u>Unconscionability</u>

Plaintiff argues that enforcing the limitation of value would be substantively and procedurally unconscionable because: (1) the provision does not stand out from the rest of the renter's agreement; (2) there is no evidence that Nicholson read the

agreement before he signed it, and he did not have his necessary reading glasses at the time the contracts were presented to him; and (3) there is no evidence that Nicholson was expressly told about the limitation.

First, as discussed above, the limitation of value provision in Paragraph 8 complied with Section 7.5 of the Storage Act because it was written in bold and underlined. Plaintiff's additional implication that Defendant had an affirmative obligation to point out Paragraph 8 to Nicholson is not supported by either law or argument.

Second, Plaintiff does not dispute that Nicholson did in fact sign the contracts and that they included the limitation of value provision. Nicholson's failure to read the contracts before signing them does not make it unconscionable to enforce the contracts against Plaintiff.[5] *See U.S. v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1120 (7th Cir. 1990) ("Rights under a contract are not forfeited by the other party's failure to read it."); *see also Novitsky v. Am. Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("People are free to sign legal documents without reading them, but the documents are binding whether read or not."); *Murray v. Little*, No. 13 C 2496, 2015 WL 2128907, at *1 (N.D. Ill. May 5, 2015) ("Throughout every area of the law, of course, a party's choice to ignore a notice or not to read a contract works against [it].").

---

[5] Throughout the litigation, Plaintiff has not disputed that the payment terms are enforceable against it despite Nicholson's alleged failure to read the agreements, and of course Plaintiff seeks to enforce the contracts' notice of sale provisions against Defendant. Plaintiff's brief makes no effort to explain why the limitation of value provision is the only legally unenforceable paragraph in the contracts.

9

Finally, the Court is not persuaded by Plaintiff's suggestion that enforcement of the limitation is unconscionable because the $6 million worth of insurance allegedly obtained for the property does not cover Plaintiff's losses caused by the property sale. A contract cannot be deemed unconscionable merely because the results of enforcement are unfortunate.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment on Damages [Doc. No. 59] is granted. Plaintiff's recoverable damages are limited to $10,000.00.

**SO ORDERED.**                                    **ENTERED:**

*[signature: Maria Valdez]*

**DATE:   January 30, 2018**          _____
                                       **HON. MARIA VALDEZ**
                                       **United States Magistrate Judge**